DENNIS, Judge.
This is a suit by a corporation engaged in the business of garbage and trash removal against the City of Shreveport, Louisiana, for damages resulting from the alleged breach of a contract.
Under the terms of a written contract, entered by the parties on January 9, 1970, the City agreed to pay plaintiff for furnishing garbage and trash collection service within a certain area of the city. The contract provided, with respect to its duration, as follows :
“This agreement shall remain in effect from January 1, 1970, at 12:01 a. m. thru December 31, 1971, at 11:59 p. m. After two years the parties will have the right to renew this contract, if agreeable to both parties. This contract shall be renewed for one additional two year period unless notice is given as follows:
“If either party desires not to renew the agreement it shall give at least sixty (60) days written notice to the other of such intention, prior to the termination date.”
In an effort to terminate the contract the City of Shreveport wrote and mailed a letter on October 18, 1971, notifying the plaintiff it did not desire to renew the agreement. By mistake the letter was addressed to plaintiff at P. O. Box 3326, Shreveport, Louisiana 71103, rather than its correct mailing address, P. O. Box 3328, Shreveport, Louisiana 71103. Similar termination letters were mailed to several other garbage collection contractors within the City on the same date, and they all received the letters a few days after October 18, 1971. But the plaintiff contended that it did not receive its letter of termination until November 4 or 5, 1971, too late to prevent the renewal of the agreement under the provision quoted above.
The City treated the contract as having been terminated on December 31, 1971 and refused to pay plaintiff for picking up garbage or trash after that date. Because of this loss of revenue, plaintiff was unable to continue its operations, and brought suit against the City for damages in an amount it contended it would have realized as profits during an additional two years under the contract.
The District Court rejected the plaintiff’s contentions and found that it had actually, received the written notice of termination more than 60 days before the end of the contract term. Judgment was rendered for the defendant, and plaintiff appealed. For the reasons hereinafter assigned, we affirm.
The letter of termination was not sent by registered or certified mail, so there was no written evidence of the date .of its receipt by the plaintiff. James S. Cox, the plaintiff’s president, testified that he found the letter in his company’s mailbox on November 4 or 5, 1971. He and his wife testified that one of them normally checked the mailbox every other day, but that for several days leading up to November 1, 1971 they had checked it daily. Mrs. Cox was not with her husband when he removed the letter from the box and she saw it for the firist time about the 6th or 7th of November. Mr. Cox testified that the plaintiff received payments monthly at the *850 mailbox from about 150 customers who lived outside the city and that before entering the contract with the city it received mail regularly from approximately 2500 customers. In order to bolster his company’s position that the termination notice had arrived too late, Mr. Cox had a friend write “opened by mistake” on the envelope; and in the plaintiff’s first amended petition it was alleged that “[s]aid letter was not received until November 5, 1971, when it was found in petitioner’s Post Office Box No. 3328, previously opened, and marked ‘Opened through Mistake’.” Later, however, Mr. Cox decided not to perpetrate the misrepresentation, and the petition was amended to allege simply that the letter arrived untimely. In his testimony, Mr. Cox admitted that he at first intended to carry out a subterfuge, but he stated that he could not bring himself to lie under oath, and for this reason he argues the court should accept his word that the letter of termination was not placed in the plaintiff’s mailbox until November 4 or 5, 1971.
The defendant presented testimony from the superintendent of the post office branch at which the plaintiff’s mailbox was located. He and the one other postal employee at the branch made a practice of checking the entire address on an envelope before placing it in a mailbox. In other words, they did not usually place mail according to the box number alone. The manager testified that it was possible the letter had been put in box 3326 instead of 3328. But he said if it had not been misdirected in this manner, it probably was placed in the plaintiff’s box as soon as it was received at the branch. It was unlikely, he added, that the letter had been sent to another post office branch by mistake because when this happened to a piece of mail it was usually postmarked again, and the letter of termination bore but one postmark.
The registered user of post office box 3326, Rev. Clara Sepulvado, maintained the box for purposes of receiving requests and responses from persons who listened to her religious programs on the radio. She and her husband, who helped her check the mail, testified they were certain the city’s letter had not been delivered to box 3326, because the vast majority of the mail delivered to it had been addressed in handwriting on plain stationery, and a typewritten letter from a governmental office would have been a rarity.
The trial judge, in his well-stated reasons for judgment, reached the following conclusions:
“The plaintiff had been for some time a post office box subscriber at the then West End Branch Post Office, identified by the Zip Code Number 71103. Its Box number was 3328. The letter was therefore properly addressed except for the error in the box number, 3326 instead of 3328.
“The nature of plaintiff’s business was such that it received a considerable volume of mail through its Box Number 3328 at the West End Branch Post Office. It is a reasonable assumption that the postal clerks at that station were quite familiar with so prominent a box holder, and the error of one digit in the box number would not delay or cause mis-delivery of the letter, It is more probable than not that it was placed in the addressee’s box.
^ if; * % * #
“The circumstance which weighs heavily against the plaintiff is that the envelope containing the letter and filed in evidence has written across its face: ‘Opened through mistake.’ Testimony revealed that this was written on the envelope by a Mr. James Burford at Keithville, La. upon request and at the direction of Mr. Cox.
“When called upon for an explanation, neither Mr. Cox nor Mr. Burford could give an acceptable one. Mr. Cox testified in part as follows:
‘Question by Mr. Goode:
‘Question: Now, Mr. Cox, I want you to be truthful. What was the purpose in *851 writing- — having that written on that envelope ?
‘Answer: Well, the time that this happened, it was a matter of talking about the letter and that ah — after I had received it. It had no markings and I’ve received letters lots of times, in fact at the same Post Office box for Southern Builders, I believe, usually, and I would either- — -I have opened through mistake and put it on there, and after I got the letter out and there was some discussion about it, or had been at one time, so I brought it up one time and through some, just — I don’t know. I just thought it would be good to have it on there. And ah—
‘Question: In other words, you were attempting to guild a lilly ?
‘Answer: Well, yes, it just make it look good to me — I mean, if the letter would have it on there. And so I did it.’
“It is my belief that when the letter was received and Mr. Cox noticed the error in the box number, it then occurred to him to mark it ‘Opened through mistake’ in the handwriting of another person to support the contention that it was missent, delayed in the mails, and not timely received.
“The letter was posted October 18 in ample time to be' received by a local addressee before November 1. It is more probable than not that it was so received and I so hold as a fact.
“I, therefore, hold that the defendant City of Shreveport complied with its contract with the plaintiff with respect to notice of non-renewal and was under no obligation to plaintiff after December 31, 1971.”
After reviewing the record in this case, we find that the trial judge’s conclusions are adequately supported by the evidence. Therefore, the judgment of the District Court is affirmed at the cost of the appellant.
Affirmed.