◼ Empire Communications Consultants, Inc., Respondent,

v PAY TV OF GREATER NEW YORK, INC., Defendant and Third-Party Plaintiff-Appellant. CONTEMPORARY COMMUNICATIONS CORPORATION, Third-Party Defendant-Respondent.—In an action to recover damages for breach of contract, the defendant appeals from a judgment of the Supreme Court, Westchester County (Nastasi, J.), entered September 10, 1984, which, after a nonjury trial, is in favor of the plaintiff in the principal amount of $231,666.67, and dismisses its counterclaim against the plaintiff and its third-party complaint against the third-party defendant, Contemporary Communications Corporation.

Ordered that the judgment is reversed, on the law and the facts, with costs, the plaintiff's complaint is dismissed, and the matter is remitted to the Supreme Court, Westchester County, for further proceedings with respect to the defendant's counterclaim as against the plaintiff, and the defendant's third-party action.

The defendant, Pay TV of Greater New York, Inc., is a business that serves, *inter alia,* as a distributor of Home Box Office (hereinafter HBO) television programming in the greater New York metropolitan area. The plaintiff Empire Communications Consultants, Inc. is a wholly owned subsidiary of Contemporary Communications Corporation (herein Contemporary), which is the party to the contracts with the defendant in this action and which has assigned all of its claims and causes of actions arising out of the contracts to the plaintiff. Contemporary is a common carrier licensed and authorized by the Federal Communications Commission (hereinafter FCC) to operate multipoint distribution service (hereinafter MDS) stations—in lay terms, television transmissions over the air. Microband Corporation of America (hereinafter Microband) is another Federally regulated MDS carrier. Howard Klotz, the president of Contemporary, and outside counsel for Microband, was a friend of Microband's president, Don Franco. In addition to maintaining his own office at Contemporary's location, Klotz had an office in Microband's building on the same floor as Franco's office.

In the late spring of 1980, the defendant's president, Herman Cooper, initiated discussions with Franco, with whom he had dealt in the past, to arrange for the distribution of programming in the New Haven and Bridgeport, Connecticut, and Farmingville, Long Island, areas. Their initial discussions did not mention Contemporary. However, Franco eventually informed Cooper that Contemporary operated the two Connecticut stations, and that while Microband was authorized to procure customers for Contemporary, Franco "could not bind"

Contemporary to a contract without Klotz's approval. Nevertheless, Cooper continued to negotiate exclusively with Franco in all matters leading to the execution of the contracts.

Although Cooper was not sure that HBO would decide to distribute programming via MDS in Connecticut, Franco advised Cooper to go ahead with the execution of the contracts, since the service orders provided that the defendant could terminate the agreements without liability or loss before September 1, 1980. Service orders for Contemporary's two Connecticut stations were drawn up and Franco obtained the signatures of Klotz and Cooper on or about June 6, 1980. The service orders covered a 60-month period commencing November 1, 1980. At that time, Cooper issued a check representing a deposit on the two Connecticut service orders in the amount of $3,333.33. Microband deposited the check in its own account and about a year later credited the sum of $3,333.33 over to Contemporary. In addition, a letter dated June 6, 1980 from Contemporary, signed by Klotz, was delivered to Cooper and confirmed that the defendant had the option of terminating the agreements if it did so in writing on or before September 1, 1980.

During August 1980, Cooper informed Franco that HBO would not approve distribution of its programming by MDS in the Connecticut markets, and that he would therefore be unable to proceed with the service orders. Franco asked him to give it one more try and to notify him in writing if he decided finally to terminate the service orders. Cooper sent a letter dated August 28, 1980, notifying Franco of the defendant's cancellation, which letter Franco acknowledged receiving prior to September 1, 1980. Franco testified that he had placed a copy of the letter on Klotz's desk (at the Microband location), but Klotz denied ever receiving it. Since the service orders obligated the subscriber to pay the monthly charges regardless of whether it actually used the services, Contemporary proceeded to bill the defendant starting November 1, 1980, and continuing until the commencement of this action in March 1982.

The theory of the defendant's liability in this action is based on the plaintiff's contention that the defendant did not send Contemporary the requisite notice of termination prior to September 1, 1980. It is undisputed that the defendant's only notice was sent and delivered to Microband, and that no notice was addressed directly to Klotz or Contemporary. The action thus turned on whether or not Microband or its presi-

dent, Franco, was Contemporary's agent for the purpose of receiving the notice of termination from the defendant.

"Agency is a fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act" *(Smirlock Realty Corp. v Title Guar. Co.,* 70 AD2d 455, 464, *mod on other grounds* 52 NY2d 179; *see,* Restatement [Second] of Agency § 1). The evidence is insufficient to establish that Contemporary explicitly authorized Microband, through Franco, to act as its agent in dealing with the defendant. However, an agency relationship can arise not only out of actual authority but also apparent authority. "Essential to the creation of apparent authority are words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction. The agent cannot by his own acts imbue himself with apparent authority. 'Rather, the existence of "apparent authority" depends upon a factual showing that the third party relied upon the misrepresentation of the agent because of some misleading conduct on the part of the principal—not the agent.' *(Ford v Unity Hosp.,* 32 NY2d 464, 473; see, also, Restatement, Agency 2d, § 27.) Moreover, a third party with whom the agent deals may rely on an appearance of authority only to the extent that such reliance is reasonable (see *Wen Kroy Realty Co. v Public Nat. Bank & Trust Co.,* 260 NY 84, 92-93; Restatement, Agency 2d, § 8, Comment C; Conant, Objective Theory of Agency: Apparent Authority and the Estoppel of Apparent Ownership, 47 Neb L Rev 678, 681)" *(Hallock v State of New York,* 64 NY2d 224, 231).

Microband, by its president, clearly took an active role in the arrangement that led to the service order agreements between Contemporary and the defendant, and in the subsequent transactions concerning possible cancellation of these agreements. Indeed, all of Cooper's direct dealings were with Franco and he did not meet Klotz until years later. Klotz's insistence at trial that Microband's sole role was to obtain customers and that he, Klotz, then "took over", is belied by Franco's continued involvement in every facet of the parties' dealings long after he brought the two parties together. Franco's actions consisted of discretionary acts such as discussing how to structure the original agreements, and his directing Cooper to send the termination notice to him directly. If, as the plaintiff claims, Franco or Microband were not authorized to act as Contemporary's agent, then Franco's actions consti-

tuted misrepresentations upon which a third party, such as Cooper, might justifiably rely.

The only remaining question is whether Franco's apparent authority and Cooper's reliance were "traceable to" conduct by Contemporary *(Ford v Unity Hosp.,* 32 NY2d 464, 473, *supra).* While Franco conducted all discussions with the defendant, Klotz's signing of the agreements indicated his approval of what had transpired to that point. Moreover, Klotz raised no objection when Cooper issued a check for the deposits for both service orders payable to Microband, and Franco thereafter deposited the check into Microband's account. In fact, the deposit was not credited to Contemporary's account until nearly a year later. Thus, Cooper reasonably could have concluded that Franco was authorized to receive the deposits on behalf of Contemporary. Further, with regard specifically to the giving of a termination notice, the service orders provided that all notices to Contemporary should be "addressed to 655 Third Avenue, New York", which was the address for Microband's offices, not the offices of Contemporary. Contemporary was not listed in the building directory at 655 Third Avenue, so it would be prudent to direct any mail addressed to that address to Microband. While other portions of the service agreements and the letter of June 6, 1980 gave Contemporary's actual address, the defendant was justified in sending a notice to the only address with which it had had any contact. In addition, since the defendant had paid its deposit to Microband, it was not unreasonable to ask for its return from that same company. Therefore, the conduct by both Contemporary and Microband was sufficient to justify Cooper's conclusion that Microband, through Franco, had the authority to act as Contemporary's agent with respect to the receipt of the termination notice. The notice of termination delivered to Microband and received prior to September 1, 1980 effectively terminated the service orders, precluding any claim of liability against the defendant. Accordingly, the complaint should have been dismissed.

However, it is not clear from the record whether jurisdiction was acquired over Contemporary or whether Empire assumed the duty to refund the deposit. Thus, we cannot determine whether the defendant is entitled to a judgment for the deposit against either the plaintiff on the counterclaim or against Contemporary on the third-party complaint. Accordingly, we are remitting the matter to the Supreme Court, Westchester County, for a determination of this issue. Niehoff, J. P., Lawrence, Kunzeman and Kooper, JJ., concur.