USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 99-1216

 UNIVERSITY EMERGENCY MEDICINE FOUNDATION,

 Plaintiff, Appellee,

 v.

 RAPIER INVESTMENTS, LTD AND MEDICAL BUSINESS SYSTEMS, INC,

 Defendants, Appellants.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF RHODE ISLAND

 [Hon. Ernest C. Torres, U.S. District Judge]

 Before

 Boudin, Circuit Judge
 Bownes, Senior Circuit Judge,
 and Lipez, Circuit Judge.
 
 
 
 
 William R. Grimm, with whom Mark Bianchi and Hinckley, Allen 
& Snyder were on brief for appellants.

 Charles S. Beal, with whom Cameron & Mittleman LLP were on
brief for appellee.

November 30, 1999

 
 LIPEZ, Circuit Judge. Rapier Investments Ltd. ("Rapier")
and Medical Business Systems, Inc., ("MBS") (collectively, the
"appellants") appeal from the summary judgment entered in favor of
plaintiff-appellee, University Emergency Medicine Foundation
("Emergency Medicine"), declaring effective Emergency Medicine's
notice to terminate a service contract with appellants. This case
calls upon us to decide whether notice of termination is effective
pursuant to the law of Rhode Island where: (1) the notice is
mailed in advance of, but received after, the expiration of the
contractual notice period; and (2) a separate contractual notice
provision invites notice by mail to a certain address, but notice
is sent to, and actually received by, the noticee at a different
address. Because we agree with the trial court that such notice
was effective, we affirm. 
 I.
 As this is an appeal from an entry of summary judgment,
we recount the pertinent facts in the light most favorable to the
non-moving party, the appellants. See Reich v. John Alden Life
Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997). Emergency Medicine is a
non-profit Rhode Island corporation that provides physicians'
services to emergency departments at several Rhode Island
hospitals. Pursuant to a series of contracts spanning more than
ten years, MBS, a subsidiary of Rapier, performed coding, billing,
collection and accounts receivable services for Emergency Medicine.
 On October 1, 1995, Emergency Medicine and Rapier
executed a contract (the "Agreement") calling for MBS to service
Emergency Medicine for one year, and further providing that
 this Agreement shall be automatically extended
 for additional one (1) year period [sic]
 ("additional terms") unless and until either
 party elects to terminate this Agreement as of
 the end of the initial term or any additional
 term by giving at least four (4) months
 written notice that it elects to have this
 Agreement terminated, without cause. 
 
A separate paragraph entitled "Notices," (the "notice paragraph"),
prescribes a method by which notice may be "effectively given":
 Any notices given pursuant to this Agreement
 shall be deemed to have been effectively given
 if sent by registered or certified mail to the
 party to whom the notice is directed at the
 address set forth for such party herein above
 or at such other address as such party may
 hereafter specify in a notice given in
 accordance with this paragraph.

The only addresses "set forth" in the Agreement are Rapier's
principal office, 7 Wells Avenue, Newton, Massachusetts, and
Emergency Medicine's principal place of business, 593 Eddy Street,
Providence, Rhode Island. 
 During the contract's first year, neither party
terminated, and it automatically renewed for an additional year,
ending September 30, 1997. On Friday, May 30, 1997, Annamarie
Monks of Emergency Medicine mailed two letters intended to notify
Rapier that Emergency Medicine planned to terminate the Agreement
before it renewed for a third year. She sent one letter certified
mail to Alan Carr-Locke of Rapier at 1238 Chestnut Street, Newton,
Massachusetts. Because the letter was incorrectly addressed, it
was returned undelivered on June 10, at which point Emergency
Medicine mailed the notice to 7 Wells Avenue, Newton,
Massachusetts. She sent the second letter certified mail to JoAnn
Barato-Mills of MBS, the employee who had negotiated and signed the
Agreement on behalf of Rapier, at her place of business, 20 Altieri
Way, Warwick, Rhode Island. Ms. Barato-Mills received the letter
the following Monday, June 2, 1997.
 In the months following Emergency Medicine's notice of
non-renewal, MBS continued to perform services under the Agreement. 
Meanwhile, Emergency Medicine solicited bids for a new service
contract and, although MBS submitted a bid, Emergency Medicine
awarded the new contract to a different service provider. MBS then
asserted that, because Emergency Medicine's termination notice had
been invalid, the Agreement had already extended automatically for
an additional year, ending September 30, 1998.
 Emergency Medicine filed a complaint seeking, inter alia,
a declaration that its notice had effectively terminated the
Agreement. The parties filed cross-motions for summary judgment
on the validity of the termination notice, and the trial court
granted judgment in favor of Emergency Medicine. This appeal
ensued. 
 II.
 The Agreement entered into by Emergency Medicine and
Rapier expressly reserved to either party the power to terminate
the contract before it automatically renewed. Termination
provisions are standard fare in modern contracts, see 1A Corbin on
Contracts, 265, at 531, and such provisions often require that
the terminating party fulfill certain conditions before termination
is effective, see 6 Corbin, 1266 at 55-56. Where "the power to
terminate is a conditional power," termination is not effective
until the party seeking termination can show that the condition has
been fulfilled. See id. at 56. According to Rapier, Emergency
Medicine did not fulfill the condition required for termination
under the Agreement because it failed to provide Rapier with at
least four months written notice. We are asked therefore to
evaluate the effectiveness of Emergency Medicine's termination
notice pursuant to the contract. 
A. The Mailbox Rule
 The Agreement expressly conditions a party's right to
terminate on that party "giving at least four (4) months written
notice" to the other party. Where, as here, such "a condition is
required by the agreement of the parties . . . a rule of strict
compliance traditionally applies." Farnsworth, Contracts 8.3, at
571 (1990) (emphasis added). "Strict compliance" means that "[t]he
notice to terminate, to be effective, must be given at the
stipulated time." Fred Mosher-Grain, Inc. v. Kansas Co-op. Wheat
Mktg. Ass'n, 15 P.2d 421, 425 (Kan. 1932); see also 6 Corbin 
1266, at 65-66 (where the contract expresses a time period for
notice, it is presumed that "time is of the essence"). As one
court cautioned more than seventy-five years ago, "[t]he difference
of one day in the giving of notice is small, in one view, but it is
the distance across a necessary boundary in relations under the
contract, and must be taken as decisive, or there can be no
boundary." Brown Method Co. v. Ginsberg, 138 A. 402, 403-04 (Md.
1927). Accordingly, we must strictly enforce the four-month notice
period bargained for by Rapier and Emergency Medicine. 
 The Agreement, as extended by renewal for one additional
year, was set to expire on September 30, 1997. Counting back
exactly four months, the last day on which Emergency Medicine had
the power to terminate was May 31, 1997. Although Emergency
Medicine mailed notice letters on May 30, these letters were not
received until after the notice period had expired. Thus, the
timeliness of Emergency Medicine's notice turns on whether notice
of termination is effective upon mailing, or upon receipt. 
 At common law, the default rule -- i.e., the rule that
governs unless the parties contract for different terms -- makes
notice effective only upon receipt, not mailing. See 1A Corbin
 265, at 532 ("If the agreement merely provides that one party may
terminate by giving notice, the notice will be effective only when
received, and not when it is started by mail or otherwise."); 
Kantrowitz v. Dairymen's League Co-Op. Ass'n, Inc., 71 N.Y.S.2d
821, 822 (N.Y. App. Div. 1947) ("[W]here a contract requires
notice, but does not specify the manner in which the notice is to
be given, the mere mailing of notice is not sufficient unless it is
received within the time specified.").
 However, the parties may override the default rule by
contract. See 6 Corbin 1266, at 65 ("The time and manner of
exercising a power of termination may be specified in the contract
. . . ."). In particular, the parties may contract to permit
notice by mail. If they do, notice becomes effective upon mailing
pursuant to the time-honored "mailbox rule." See 1 Merrill on
Notice 633 (1956); Kantrowitz, 71 N.Y.S.2d at 822; cf. Larocque
v. Rhode Island Joint Reinsurance Ass'n, 536 A.2d 529, 531 (R.I.
1988) ("Where the [insurance] policy provides that cancellation may
be effected by mailing notice, the general rule is that
notification is fulfilled by proof of mailing.").
 Here, the Agreement unquestionably authorizes notice by
mail. The notice paragraph expressly invites notice "sent by
registered or certified mail." This paragraph therefore triggers
the "mailbox rule," making notice effective upon mailing. 
Accordingly, Emergency Medicine's notice letters, mailed on May 30,
1997, took effect on that date, and were timely under the
Agreement's four-month notice period, which did not expire until
May 31, unless the use of an address other than the one specified
in the contract deprived Emergency Medicine of the benefit of the
mailbox rule.
B. The Mailing Address
 The notice paragraph states that notice "shall be deemed
to have been effectively given if sent . . . to the party to whom
the notice is directed at the address set forth for such party
herein above or at such other address as such party may hereafter
specify . . . ." The address "set forth" in the Agreement was
Rapier's principal office located at 7 Wells Avenue, Newton,
Massachusetts. Emergency Medicine, however, mailed its May 30
notices to Rapier at an incorrect Massachusetts address and to MBS
at a Rhode Island address. 
 The trial court concluded that the notice paragraph,
written in non-exclusive language, only set forth one method by
which notice could be "effectively given." See University
Emergency Med. Found. v. Rapier Inv., Ltd., No. 97-549-T, slip. op.
at 4-5 (D.R.I. October 15, 1998) (order granting summary judgment). 
The court then noted that, as a general rule, notice given by a
method different from the one provided for in the contract "is
effective if it is actually received unless the method by which
notice is given is an essential element of the transaction." Id.
(citing 1 Merrill, 603, at 662-63). Finding that Emergency
Medicine's notice was actually received (and, impliedly, that the
contractual method for providing notice was not an "essential
element" of Rapier and Emergency Medicine's transaction), the court
ruled that notice was effective. See id. at 6.
 We accept the trial court's conclusion that the notice
was effective, but disagree slightly with its underlying reasoning. 
Although the notice paragraph is non-exclusive, permitting notice
in any other way recognized by law, Emergency Medicine must rely on
the notice paragraph on the facts of this case because it is only
this paragraph that invites notice by mail, and, consequently, as
discussed above, it is only by virtue of this paragraph that
Emergency Medicine's notice was timely. Because Emergency Medicine
must rely on the notice paragraph as its authority for invoking the
"mailbox rule," we must inquire whether Emergency Medicine's notice
letters complied with the terms and conditions of valid notice
under that paragraph.
 In doing so, we are mindful of the principle, so
fundamental in the law of contracts, that we must give effect to
the intent of the parties. See McCarthy v. Azure, 22 F.3d 351, 355
(1st Cir. 1994); Brady v. Norwich Union Fire Ins. Soc., Ltd., 133
A. 799, 799 (R.I. 1926). Here, the critical question is whether
the parties intended the use of the mailing address specified in
the contract to be a condition precedent to valid termination. We
conclude that they did not. Rather, we find that the parties
identified specific addresses for the mailing of notice merely as
a convenient means of ensuring timely delivery.
 First, we note the obvious difference in import of the
four-month notice provision and the mailing address provision. A
notice period reflects the amount of time deemed necessary by the
parties to adapt to the other's termination. For the service
provider, it includes the time needed to procure new clients or
reallocate staff and equipment; for the service recipient, it
includes the time needed to replace its former service provider. 
By contrast, the mailing address does not, in itself, confer any
benefit upon either party. It is merely a collateral term intended
to enhance the probability that mailed notice will arrive promptly
in the proper hands. Cf. Palo Alto Town & Country Village, Inc. v.
BBTC Co., 521 P.2d 1097, 1100 (Cal. 1974) (in bank) (an option
contract's provision that notice be given personally or by prepaid
registered mail is a "mere suggestion of a permissive method of
communication," not "a prescribed requirement or an absolute
condition."). Thus, by its very nature, the stipulation that
notice be sent to a particular address is not the type of term
ordinarily bargained-for, nor is it the type of term intended to
allow one party to extinguish the other's contractual rights based
on a failure of strict compliance. Indeed, courts have held that
mailed termination notice is valid so long as it is actually
received by the noticee, even where it is mailed to an incorrect
address, see U.S. Broad. Co. v. National Broad. Co., 439 F. Supp.
8, 9-10 (D. Mass. 1977), or where the form of the mailing is
technically defective, see Southern Sanitation Co. v. City of
Shreveport, 308 So. 2d 848, 849 (La. Ct. App. 1975) (letter
addressed incorrectly to "P.O. Box 3326" rather than "3328."); 
Barbier v. Barry, 345 S.W.2d 557, 562 (Tex. Civ. App. 1961) (letter
sent by regular rather than registered mail). But see Prudential
Carolinas Realty v. Cambridge Dev. Corp., 872 F. Supp. 256, 261
(D.S.C. 1994) aff'd, 42 F.3d 1386 (4th Cir. 1994) (per curiam).
 Second, the overall structure of the Agreement indicates
that the parties did not intend the mailing address to be a
condition of valid termination. See Aneluca Assoc. v. Lombardi,
620 A.2d 88, 92 (R.I. 1993) (construing the parties' intent by
looking to the contract as a whole). The paragraph of the
Agreement delineating termination rights appears five pages before
the paragraph describing "notice" by mail. The only conditions of
termination expressed within the paragraph on termination rights
are that notice be given in writing and at least four months in
advance of the Agreement's year-end date. Moreover, as the trial
court correctly found, the notice by mail paragraph is written in
non-exclusive language, suggesting that any method of written
notice valid under law would be effective. See University
Emergency Med. Found., No. 97-549-T, slip. op. at 4-5; see also
Southern Region Indus. Realty, Inc. v. Chattanooga Warehouse and
Cold Storage Co., 612 S.W.2d 162, 164 (Tenn. 1980) (finding that
the contractual address "merely suggests a permitted place and
method of giving notice and does not preclude sending notice to
other offices . . . ."). If the parties had intended the use of
the address specified in the contract to be a condition of valid
termination, like the four-month notice period, they presumably
would have located the address requirement next to the notice
period in the paragraph defining termination rights. Moreover, if
the address was an essential term of the bargain, the parties would
have made notice sent to that address the exclusive means of
providing written notice, rather than just one method among many
that would have been effective. Thus, the overall structure of the
Agreement supports our conclusion that the parties intended the
mailing address as a convenient means of effectuating delivery and
not as a condition precedent to valid termination.
 To be sure, a party that fails to use the address
identified in the contract for mailing notice risks losing the
benefit of the mailbox rule. The contract provision at issue in
this case, which states that notice of termination may be given
effectively by registered or certified mail sent to a particular
address, allocated the risk of non-delivery of a notice sent in
strict compliance with the contract. Cf. Worms v. Burgess, 620
P.2d 455, 457 (Okla. Ct. App. 1980) (observing that in the offer-
acceptance context the mailbox rule shifts the risk of loss during 
transmission to the offeror); Farnsworth, Contracts 3.22, at 184
("The mailbox rule has been used to allocate the risk of
transmission . . . ."). That is, if Emergency Medicine chose to
give timely notice of termination by registered or certified mail
sent to the specified address, and the notice was undelivered
because of a failure by the postal service, Emergency Medicine
would have still given timely notice of termination despite the
non-delivery. Cf. Restatement (Second) of Contracts 63 ("Unless
an offer provides otherwise, . . . an acceptance made in a manner
and by a medium invited by an offer is operative . . . without
regard to whether it ever reaches the offeror . . . ."). If,
however, Emergency Medicine directed its otherwise timely notice of
termination to the wrong address and there were no delivery,
Emergency Medicine would lose the benefit of the mailbox rule. In
situations where there is delivery despite the use of a wrong
address, and the circumstances indicate that the parties intended
the address as merely a collateral term designed to enhance the
timely delivery of notice, the continuing availability of the
mailbox rule to the sender requires an assessment of the particular
facts of the case. 
 In the case at hand, Emergency Medicine risked losing the
benefit of the mailbox rule with respect to both of its improperly
addressed May 30 mailings. That risk arguably materialized in the
case of the letter mailed to Rapier's Alan Carr-Locke, which was
returned undelivered, and finally arrived at Rapier more than 10
days after it was originally sent. However, the letter mailed to
MBS's JoAnn Barato-Mills arrived in her hands just one business day
after it was mailed (the letter was mailed on Friday and arrived on
Monday), within the ordinary time period expected for delivery by
mail. Under these circumstances, Emergency Medicine retained the
benefit of the mailbox rule despite the improper address, and this
second letter placed Rapier on written notice of Emergency
Medicine's intent to terminate the Agreement before it
automatically renewed for a third year. Therefore, we conclude
that Emergency Medicine provided Rapier with four months written
notice of its intent to terminate as required under the Agreement.
 Affirmed.