# United States Court of Appeals
## For the First Circuit
_____

No. 14-1739

NEW ENGLAND CARPENTERS CENTRAL COLLECTION AGENCY; TRUSTEES OF
NEW ENGLAND CARPENTERS PENSION FUND; TRUSTEES OF NEW ENGLAND
CARPENTERS GUARANTEED ANNUITY FUND; TRUSTEES OF NEW ENGLAND
CARPENTERS HEALTH BENEFITS FUND; TRUSTEES OF NEW ENGLAND
CARPENTERS VACATION SAVINGS FUND; TRUSTEES OF NEW ENGLAND
CARPENTERS TRAINING FUND; BOSTON TRUSTEES OF CARPENTERS
APPRENTICESHIP & TRAINING FUND; TRUSTEES OF MASSACHUSETTS
CARPENTERS APPRENTICESHIP & TRAINING FUND,

Plaintiffs, Appellants,

v.

LABONTE DRYWALL COMPANY, INC.,

Defendant, Appellee.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

_____

Before

Barron, Circuit Judge,
Souter,* Associate Justice,
and Lipez, Circuit Judge.

_____

Thomas R. Landry, with whom Krakow & Souris LLC was on brief,
for appellants.
Mark J. Ventola, with whom David L. Hansen and Sheehan Phinney

_____

* Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

Bass + Green were on brief, for appellee.

_____

July 31, 2015

_____

**LIPEZ**, **Circuit Judge**.    Plaintiffs-Appellants, the trustees for a group of union-related benefits funds and their collection agency,[1] filed this action against Defendant-Appellee Labonte Drywall Company ("Labonte Drywall") seeking enforcement of an agreement that required the company to allow an audit of its records.  After a one-day bench trial, the district court found that Labonte Drywall had terminated the pertinent agreement, and, hence, plaintiffs had no legal right to conduct the requested audit.  We affirm.

**I.**

We set forth the facts based on the record and findings of the district court.  See McDermott v. Marcus, Errico, Emmer & Brooks, P.C., 775 F.3d 109, 113 (1st Cir. 2014).  Labonte Drywall was a New Hampshire corporation engaged in commercial drywall work until May 2007, when it converted to a limited liability company. Clermont Labonte is, and was at all relevant times, the sole member and owner of Labonte Drywall.

On January 31, 1996, Labonte, on behalf of Labonte Drywall, signed a statewide agreement with local Massachusetts unions affiliated with the United Brotherhood of Carpenters and

_____

[1] The trustee plaintiffs, identified in the caption of this case, have designated plaintiff New England Carpenters Central Collection Agency (the "Agency") to collect all monies owed to the funds by employers.

Joiners of America (collectively referred to as the "Union").[2] The agreement allowed Labonte Drywall to hire Union carpenters for its business. Paragraph 1 of the statewide agreement provided that: "[Labonte Drywall] accepts and agrees to abide by the collective bargaining agreements between the various contractor associations and the [Union] wherever those contracts shall apply. [Labonte Drywall] agrees that it shall abide by any amendments or successor agreements negotiated by the contractor associations and the [Union]."[3] The agreement added that its duration "shall be co-extensive with the terms set out in the collective bargaining agreements referred to in paragraph 1 unless either party to this statewide agreement gives notice of termination of this agreement in accordance with the applicable notice provisions in the collective bargaining agreement referred to in paragraph 1."

---

[2] The local Massachusetts unions are members of the New England Regional Council of Carpenters, which represents carpenters unions in Connecticut, Maine, Massachusetts, New Hampshire, Rhode Island, and Vermont. The New England Regional Council of Carpenters, in turn, is a part of the national United Brotherhood of Carpenters and Joiners of America.

[3] The "various contractor associations" which are parties to the collective bargaining agreement at issue in this appeal include the Labor Relations Division of the Associated General Contractors of Massachusetts, Inc., the Building Trades Employers' Association of Boston and Eastern Massachusetts, Inc., and the Labor Relations Division of the Construction Industries of Massachusetts.

Article 31 of the collective bargaining agreement in effect from September 1, 2005 through August 31, 2009, provided as follows:

> This agreement will expire on August 31, 2009 except that if neither party to this Agreement gives notice in writing to the other party on or before July 1, 2009 that it desires a change after August 31, 2009, then this Agreement will continue in effect until August 31, 2010 and so on each year thereafter unless on or before July 1 of each year thereafter, a notice is given by either party.

The collective bargaining agreement required employers to make contributions to various pension, annuity, health benefits, vacation, and training funds in accordance with its terms. The funds are "employee pension benefit plans" and "employee welfare benefit plans" within the meaning of § 3(1) and (2) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1002(1) and (2). The contributions to the funds were to be made on a weekly basis on behalf of all employees covered by the collective bargaining agreement. The collective bargaining agreement also required employers to comply with the terms of the trust agreements for each fund. The trust agreements permitted the trustees, or their authorized representatives, to audit the pertinent payroll records of any employer whenever such audit is deemed necessary by the trustees.

Employers are generally audited on a three-year audit cycle. The audits are overseen by the Agency, which conducts approximately 150 to 200 audits per year. The purpose of the audits is to determine, among other things, whether any covered employees have worked hours for which contributions to the funds have not been remitted.

In January 2007, the Agency notified Labonte Drywall by letter that an audit would be conducted for the period from January 1, 2004 through the end of 2006 (the "2007 audit"). Leo Donohue, a payroll auditor for the Agency, conducted the audit. Dany Labonte, the son of owner Clermont, was authorized to act as Labonte Drywall's agent when responding to audit requests. Labonte Drywall provided materials requested during the audit. However, in a letter dated April 3, 2007, Dany Labonte informed Donohue that "Labonte Drywall has not had work or done work in the union now since December of 2005. The last job we did was Manchester Place for Moriarty in Manchester, NH. We lost so much money again on another union job that we are no longer bidding or doing any more union work." The letter was addressed to Donohue and contained Dany Labonte's name in type, but without a corresponding signature. At trial, Donohue did not recall receiving the April 3, 2007 letter.

At the conclusion of the 2007 audit, Donohue prepared a report claiming that Labonte Drywall had underreported a total of 24 hours of work by 38 employees in 2004, 4,765 hours of work by 74 employees in 2005, and 40 hours of work by one employee in 2006. There was no evidence in the record that any steps were taken by the Agency to enforce the collection of payments on the underreported hours.

In February 2010, the Agency informed Labonte Drywall that an audit would be conducted for the period from January 1, 2007 through December 31, 2009 (the "2010 audit"). Two months later, in April, the Agency's counsel, Christopher Souris, sent Clermont Labonte a letter demanding that Labonte Drywall cooperate with the 2010 audit. The same day, Souris, on behalf of the Union, sent Clermont a second letter, stating that Labonte Drywall "is operating nonunion companies" in violation of the collective bargaining agreement. That letter enclosed a questionnaire asking for 79 categories of information covering a six-year period, from January 1, 2004 through April 6, 2010. In particular, the Union expressed concern that Labonte Drywall was performing payroll services for other drywall companies, including C-D-Bee Drywall, LLC, and Progress Drywall, LLC.

In an e-mail dated July 1, 2010, Labonte Drywall's counsel Diana Wieland informed Souris that, while Labonte Drywall

would provide the information requested in the questionnaire, the company believed that it had no existing bargaining relationship with the Union. Wieland followed up with a letter to Souris responding to the questionnaire. The letter repeated Labonte Drywall's claim that it had ceased performing drywall installation work in December 2005 and that the funds were aware that Labonte Drywall "no longer has a bargaining relationship with the Union."

More than a year later, in a letter dated August 31, 2011, the Agency expanded the 2010 audit request and asked Labonte Drywall to produce its payroll records through the date of the letter. Labonte Drywall did not respond to either the 2010 or 2011 audit requests.

Plaintiffs subsequently filed this action in the district court under ERISA and the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 141-87, seeking to enforce Labonte Drywall's compliance with an audit of its payroll and employment records for the period January 1, 2007 through August 31, 2011. After holding a one-day bench trial, the district court found in favor of Labonte Drywall. See New Eng. Carpenters Cent. Collection Agency v. Labonte Drywall Co., No. 12-10734-RGS, 2014 WL 2566136, at *5 (D. Mass. June 5, 2014). The court credited Dany Labonte's testimony that "the April 3, 2007 letter to Donohue was mailed and was intended as a written termination of the [agreement] between the

Union and Labonte [Drywall]." Id. at *4. The court stated that "Dany Labonte's layman's choice of words [in the letter] was sufficiently clear to require, at least, some responsive inquiry from the Union or the [f]unds. However, nothing ensued from either entity on the subject." Id. Although the letter was directed to Agency employee Donohue, the district court ruled that the Union had actual notice of the letter. See id. Because the collective bargaining relationship had been terminated, the court concluded that "plaintiffs had no legal right to conduct an audit of Labonte [Drywall]'s payroll for the period from January 1, 2007, through August 31, 2011." Id. at *5. Judgment entered for Labonte Drywall, and plaintiffs timely appealed.

## II.

Plaintiffs contend that the district court erred when it concluded that (1) the April 3, 2007 letter terminated the collective bargaining relationship between Labonte Drywall and the Union, and (2) plaintiffs were not entitled to audit Labonte Drywall's records, at least through August 31, 2009.

We review the district court's findings of fact for clear error and its conclusions of law de novo. See Walgreen Co. v. Rullan, 405 F.3d 50, 55 (1st Cir. 2005). A factual finding is "clearly erroneous" only if, "on the whole of the record, we form a strong, unyielding belief that a mistake has been made."

- 9 -

<u>Cumpiano</u> v. <u>Banco Santander Puerto Rico</u>, 902 F.2d 148, 152 (1st Cir. 1990); <u>see also</u> <u>United States</u> v. <u>15 Bosworth St.</u>, 236 F.3d 50, 53 (1st Cir. 2001) ("[T]he court's factual findings are entitled to considerable deference.").

Plaintiffs' arguments require us to interpret the terms of the statewide agreement and the collective bargaining agreement. Under the LMRA, "[i]nterpretation of labor contracts . . . is a matter of federal common law." <u>Senior</u> v. <u>NSTAR Elec. & Gas Corp.</u>, 449 F.3d 206, 216 (1st Cir. 2006); <u>see</u> <u>also</u> <u>Sweeney</u> v. <u>Westvaco Co.</u>, 926 F.2d 29, 36 (1st Cir. 1991) (noting that "federal common law . . . applies to disputes arising out of collective bargaining agreements"). "[A] court should resort to traditional principles of contract interpretation to the extent such principles are consistent with federal labor law." <u>Senior</u>, 449 F.3d at 216; <u>see</u> <u>also</u> <u>Dist. Lodge 26, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO</u> v. <u>United Techs. Corp.</u>, 610 F.3d 44, 51 (2d Cir. 2010) ("While it is true that traditional contract rules do not always rigidly apply to collective bargaining agreements, courts must look to traditional state contract law, when it is not inconsistent with federal labor policy, to form the content of the federal common law governing labor agreements." (internal quotation marks omitted)).

**A. The April 3, 2007 Letter**

Pursuant to the statewide agreement's termination provision, Labonte Drywall was required to "give[] notice of termination of this agreement in accordance with the applicable notice provisions in the collective bargaining agreement." The notice provision of the collective bargaining agreement in effect from September 1, 2005 through August 31, 2009 required that "either party to this Agreement give[] notice in writing to the other party" to terminate the agreement. Therefore, to terminate its statewide agreement with the Union, Labonte Drywall was required to provide a "notice of termination" "in writing to the other party."

Plaintiffs contend that the April 3, 2007 letter could not have terminated the statewide agreement because it was not a "notice of termination" and was not provided to "the other party." We address each issue in turn.

**1. Notice of Termination**

A party's "stated intent to withdraw from [a collective bargaining relationship] is effective only if it is both timely and unequivocal."[4] Haas Elec., Inc. v. NLRB, 299 F.3d 23, 27 (1st

---

[4] Relying on cases from the Sixth Circuit, plaintiffs contend that a notice of termination must be "clear and unambiguous" to be effective. Pls.' Br. at 25 (citing Office & Prof'l Emp. Int'l Union, Local 42, AFL-CIO v. United Auto., Aerospace & Agr. Implement Workers of Am., Westside Local No. 174, UAW, 524 F.2d

Cir. 2002) (Stahl, J., concurring) (citing Retail Assocs., Inc., 120 N.L.R.B. 388, 393-95 (1958)). "The decision to withdraw must contemplate a sincere abandonment, with relative permanency, of the multiemployer unit." See Retail Assocs., Inc., 120 N.L.R.B. at 394.

Plaintiffs contend that the April 3, 2007 letter did not communicate an unequivocal intent to terminate Labonte Drywall's agreement with the Union because it "makes no mention of 'termination' and does not mention either the [s]tate[w]ide [a]greement or the collective bargaining agreement." Pls.' Br. at 28.

Plaintiffs' argument implicates two legal questions. The first question is whether the terms of the statewide agreement required Labonte Drywall to use any particular language in its notice of termination. See OfficeMax, Inc. v. Levesque, 658 F.3d 94, 97 (1st Cir. 2011) ("Contract interpretation, when based on contractual language without resort to extrinsic evidence, is a

---

1316, 1317 (6th Cir. 1975); Int'l Union of Operating Eng'rs, Local No. 181 v. Dahlem Constr. Co., 193 F.2d 470, 475 (6th Cir. 1951)). Yet, plaintiffs never explain how this "clear and unambiguous" standard is different from the "timely and unequivocal" standard that the National Labor Relations Board articulated in Retail Assocs., Inc., 120 N.L.R.B. at 393, which we applied in Haas Elec., Inc. See 299 F.3d at 27 (Stahl, J., concurring); id. at 36 (Torruella, J., dissenting). To the extent there is a difference between the legal standards, we are bound by the "timely and unequivocal" standard.

'question of law' that is reviewed de novo."). The second question is whether Labonte Drywall's letter expressed an unequivocal intent to withdraw from the collective bargaining relationship so as to be a legally effective termination.[5]  See, e.g., Univ. Emergency Med. Found. v. Rapier Investments, Ltd., 197 F.3d 18, 20 (1st Cir. 1999).  We address each in turn.

### a. What the Termination Provision Requires

Regarding the first question, we agree with the district court's conclusion that the statewide agreement's termination provision "does not require any specific terminology to be effective."  Labonte Drywall Co., 2014 WL 2566136, at *4.  Nothing in the four corners of the statewide agreement requires a party's notice of termination to explicitly include the words "termination," "statewide agreement," or "collective bargaining agreement."  The termination provision simply requires a "notice of termination" in writing.  See ITT Corp. v. LTX Corp., 926 F.2d 1258, 1265 (1st Cir. 1991) (rejecting party's attempt to insert condition into agreement "since no such clause or statement appears within the contract's four corners").

---

[5] Although a party's stated intent to terminate its obligations under a collective bargaining agreement must be both "timely and unequivocal," Haas Elec., Inc., 299 F.3d at 27 (Stahl, J., concurring), the parties do not dispute that the letter was timely.

## b. Labonte Drywall's Stated Intent to Withdraw

Regarding the second question, we also agree with the district court's determination that the April 3, 2007 letter expressed an unequivocal intent to terminate Labonte Drywall's collective bargaining relationship with the Union.  See Labonte Drywall Co., 2014 WL 2566136, at *4.

The April 3, 2007 letter clearly states that "Labonte Drywall has not . . . done work in the union now since December of 2005" and is "no longer bidding or doing any more union work." The letter, on its face, contained no language suggesting that Labonte Drywall was equivocal in its desire to no longer work with the Union.  See Haas Elec., Inc., 299 F.3d at 29 (Stahl, J., concurring) (finding that employer's letter expressed an unequivocal intent to terminate collective bargaining relationship even though it "admittedly did not use precise language in articulating its intent to withdraw"); cf. Louisiana Bricklayers & Trowel Trades Pension Fund & Welfare Fund v. Alfred Miller Gen. Masonry Contracting Co., 157 F.3d 404, 409 n.12 (5th Cir. 1998) (finding termination letter ineffective when it "equivocated by agreeing to abide by the terms of the [collective bargaining agreement] 'for the immediate future.'").  Moreover, the collective bargaining agreement in effect from 2005 to 2009 provided that all workers hired by an employer, who worked more

- 14 -

than seven days, had to become (or seek to become) members of the Union, as long as the employer was engaged in the kind of work covered by this agreement. Since the collective bargaining agreement, by its terms, does not allow an employer to perform drywall work without hiring Union workers, the letter's statement that Labonte Drywall was "no longer bidding or doing any more union work" clearly indicated its intent to terminate the ongoing relationship with the Union.

The parties' conduct after Dany Labonte sent the April 3, 2007 letter confirms that they understood that the letter had terminated the collective bargaining relationship between Labonte Drywall and the Union. Cf. Haas Elec., 299 F.3d at 29 (Stahl, J., concurring) (finding that employer's letter to union terminated collective bargaining relationship where the union did not "question[] the meaning of the letter" at the time and the employer's subsequent conduct was consistent with its "stated intent to withdraw"). Labonte Drywall last employed Union workers in December 2005, and there is no evidence in the record that the company solicited Union work or performed any other Union-related activity after that time. Importantly, between the end of 2007 and the beginning of 2010, Union representatives visited Labonte Drywall multiple times to request that the company rejoin the Union. Besides these visits, Labonte Drywall received no

communication from the Union or the Agency until the February 2010 letter requesting an audit of Labonte Drywall's records. Labonte Drywall was no longer receiving copies of the collective bargaining agreements from the Union. Labonte Drywall also had stopped receiving copies of the Union's wage and benefit packages. The Union's director of contractor relations testified that the Agency "stop[s] sending these wage and benefit packages to signatory employers if they are no longer members of the Union" and "had terminated" their collective bargaining relationship with the Union. In short, the parties' actions demonstrate that both understood that the April 3, 2007 letter had ended their agreement.

## 2. Notice to the Other Party

Plaintiffs also argue that the April 3, 2007 letter was not a valid termination because Labonte Drywall did not send the letter to the Union, which is "the other party" to the statewide agreement. Dany Labonte sent the letter to Donohue, an employee of the Agency, not the Union. Plaintiffs contend that the Union and the Agency are separate legal entities, and that Donohue was not a de facto agent of the Union. Thus, they insist that Labonte Drywall did not provide notice of termination to the Union.

Labonte Drywall does not contest that the Union and the Agency are separate entities as a matter of law. Nor does it argue that Donohue was an agent for the Union. Instead, Labonte Drywall

- 16 -

contends, and the district court found, that the Union received actual notice of Labonte Drywall's termination of the collective bargaining relationship.  See Labonte Drywall Co., 2014 WL 2566136, at *4.

The district court's finding implicates both legal and factual questions.  The legal question, which we review de novo, is whether actual notice is sufficient to terminate the collective bargaining relationship under the terms of the statewide agreement.  The factual question, which we review for clear error, is whether the Union received actual notice of the April 3, 2007 letter.  We address each in turn.

### a. Whether Actual Notice Is Sufficient

Although the statewide agreement's termination provision states that written notice should be given "to the other party," the agreement must be read "in a reasonable and practical way, consistent with its language, background, and purpose."  Bukuras v. Mueller Grp., LLC, 592 F.3d 255, 262 (1st Cir. 2010) (internal quotation marks omitted).  The primary purpose of the termination provision is to ensure that "the other party" to the agreement receives the notice of termination in a timely fashion.  Actual notice that is timely achieves that purpose.  See In re Redondo Constr. Corp., 678 F.3d 115, 123 (1st Cir. 2012) ("[S]trict conformity with a contract's written notice provision is not

- 17 -

required as long as the counterparty receives substantially the same information through timely actual notice and suffers no prejudice from the non-conformity." (emphasis added)); Univ. Emergency Med. Found. v. Rapier Investments, Ltd., No. CIV.A. 97-549-T, 1998 WL 34100601, at *2 (D.R.I. Oct. 16, 1998) aff'd, 197 F.3d 18 (1st Cir. 1999) ("Even where a contract requires a particular method of giving notice, notice given by a different method is effective if it is actually received unless the method by which notice is given is an essential element of the transaction." (citing 1 Maurice H. Merrill, Merrill on Notice § 603, at 662–63 (1952)) (emphasis added)); see also Univ. Emergency Med. Found., 197 F.3d at 22 (finding termination notice valid although party failed to strictly comply with notice provision because that provision did not "itself, confer any benefit upon either party" and was "merely a collateral term intended to enhance the probability that mailed notice will arrive promptly in the proper hands").[6]

---

[6] Courts have consistently found termination notices valid when the other party actually received the notice in a timely fashion. See, e.g., Univ. Emergency Med. Found., 197 F.3d at 22; (noting that a "mailed termination notice is valid so long as it is actually received by the noticee, even where it is mailed to an incorrect address" (emphasis added)); Mason Tenders Dist. Council Welfare Fund v. All Union, Inc., No. 01 CIV. 0152(AGS), 2002 WL 31115181, at *4 (S.D.N.Y. Sept. 23, 2002) (finding termination letter valid because evidence "shows that the Union actually received the [letter]" even though it may not have been sent by certified mail in accordance with the terms of the collective

- 18 -

In this case, plaintiffs make no argument that actual notice, if received by the Union, would be untimely, prejudicial, or somehow undermine an essential element of Labonte Drywall's collective bargaining relationship with the Union. We, therefore, hold that if the Union received actual notice of the April 3, 2007 letter, Labonte Drywall's termination of the collective bargaining relationship would be valid.

### b. Whether the Union Received Actual Notice

At trial, plaintiffs argued that the Agency and the Union "operated as wholly separate entities," and, therefore, a notice sent to Donohue would not be received by the Union. Labonte Drywall Co., 2014 WL 2566136, at *4. However, the district court did not find this blanket assertion credible as a description of their communications regarding Labonte Drywall, in part because "the same attorney (Souris) represented both entities and pursued their interests" together in their dealings with Labonte Drywall. Id. For example, the record demonstrates that, on the same day in April 2010, Attorney Souris sent Labonte Drywall two letters: one on behalf of the Agency requesting compliance with the 2010 audit,

---

bargaining agreement (emphasis added)); U.S. Broad. Co. v. National Broad. Co., 439 F. Supp. 8, 10 (D. Mass. 1977) (finding termination notices valid because "it would be hypertechnical in the extreme to hold that notice actually received was ineffective" where "it is clear that plaintiff and plaintiff's counsel timely received both notices" (internal quotation marks omitted) (emphasis added)).

and another on behalf of the Union requesting compliance with the collective bargaining agreement. These seemingly concerted actions, through the same attorney, indicate that there was actual communication between the Union and Agency about Labonte Drywall. As the district court reasonably concluded, the plaintiffs' rebuttal -- that the Agency and Union were operating as wholly separate entities -- was not credible in light of their cooperation on matters involving Labonte Drywall.

Moreover, the court credited plaintiffs' testimony that "the Union is in regular communication with the Agency regarding the status of employers who are no longer active in the Union or who request to terminate the collective bargaining relationship." Id. at *4 n.6. The record demonstrates that the Union and the Agency regularly communicate when "an employer is removed from the list" of signatory employers and is "no longer active" with the Union, which supports the district court's reasonable inference that the two entities communicated regarding Labonte Drywall's notice of termination.

The Union's actions after the April 3, 2007 letter was sent also demonstrate that the Union received Labonte Drywall's notice of termination. As explained above, besides visits from Union representatives asking Labonte Drywall to rejoin the Union, Labonte Drywall received no communication from the Union or the

Agency.  The company no longer received copies of the collective bargaining agreements or the Union's wage and benefit packages.

We, therefore, find no clear error with the district court's finding that the Union -- "the other party" to the statewide agreement -- had actual notice of Labonte Drywall's April 3, 2007 termination letter.[7]

## B. Labonte Drywall's Audit Obligations

Plaintiffs argue that even if the April 3, 2007 letter did terminate Labonte Drywall's obligations under the collective bargaining agreement, they are still entitled to audit Labonte Drywall's records through August 31, 2009.  This argument is premised on plaintiffs' belief that, under the collective bargaining agreement, Labonte Drywall's notice of termination was not effective until that date.

The termination provision of the collective bargaining agreement in effect from September 1, 2005 through August 31, 2009,

---

[7] Plaintiffs' reliance on Construction Industry Laborers Pension Fund v. Augers Unlimited, Inc., No. 05-4058-CV-C-NKL, 2006 WL 1236063 (W.D. Mo. May 4, 2006), is inapposite.  In Augers Unlimited, the court held that an employer's letter to terminate its collective bargaining relationship with the union was not effective because the employer had sent the letter to trustees of various employee benefit funds and not the union itself.  Id. at *6.  In so ruling, the court found that "there is no evidence that [the trustees] notified the [u]nion of the termination letter" or "that the [u]nion did in fact know of the termination letter." Id. at *1 n.2, *6.  As explained above, there is ample evidence in this case that the Union knew of Labonte Drywall's letter to terminate its agreement.

states: "This agreement will expire on August 31, 2009 except that if neither party to this Agreement gives notice in writing to the other party on or before July 1, 2009 that it desires a change after August 31, 2009, then this Agreement will continue in effect until August 31, 2010 . . . ." Because this provision does not permit a party to terminate the agreement before August 31, 2009, plaintiffs contend that Labonte Drywall should be bound by its audit obligations through that date.

Labonte Drywall counters that this termination provision does not apply because Labonte Drywall was not a signatory to the collective bargaining agreement. The company only signed its statewide agreement with the Union, and, Labonte Drywall contends, its termination of the statewide agreement was effective on April 3, 2007. Reviewing this issue of contract interpretation de novo, see OfficeMax, Inc., 658 F.3d at 97, we agree with Labonte Drywall's understanding of the statewide agreement.

The termination provision of the statewide agreement states: "The duration of this statewide agreement shall be co-extensive with the terms set out in the collective bargaining agreements . . . unless either party to this statewide agreement gives notice of termination of this agreement . . . ." (emphasis added). Therefore, the statewide agreement would terminate on August 31, 2009 (coextensive with the terms of the collective

- 22 -

bargaining agreement) <u>unless</u> either party had given notice of termination. Labonte Drywall gave notice of termination on April 3, 2007, and, therefore, it terminated the statewide agreement on that date. Plaintiffs' contention that both the statewide agreement and the collective bargaining agreement did not expire until August 31, 2009 would render the "unless" clause of the statewide agreement superfluous and contravene the well-recognized "canon of construction that every word and phrase of an instrument is if possible to be given meaning, and none is to be rejected as surplusage if any other course is rationally possible."[8]  <u>FDIC</u> v.

---

[8] Plaintiffs' reliance on <u>Orrand</u> v. <u>Scassa Asphalt, Inc.</u> is misplaced.  <u>See</u> No. 14-3954, 2015 WL 4430447 (6th Cir. July 21, 2015).  In that case, the applicable termination provision stated that the parties' agreement "shall remain in full force and effect . . . until expressly terminated by notice in writing from one party to the other party at least sixty (60) days prior to its anniversary date."  <u>Id.</u> at *1.  The employer argued that it had received a notice letter from the union terminating the agreement. <u>Id.</u> at *6.  However, the Sixth Circuit upheld the district court's determination construing the letter as "a notice of contract modification, not a notice of termination, because the Union expressly stated its 'desire to modify, amend, and/or negotiate a new agreement' and 'to open negotiations for a new agreement covering wages, hours and conditions of employment.'  The language of the Union's letter also indicated a desire on the part of the Union to continue the relationship between the parties, not to terminate it."  <u>Id.</u> at *7 (internal citation omitted).  For this reason, the court found that the parties' collective bargaining relationship "remained in force because neither the Union nor [the employer] gave timely written notice to the other party of an intent to terminate."  <u>Id.</u> at *8.  As demonstrated above, Labonte Drywall gave timely written notice of termination to the Union through the April 3, 2007 letter.

_Singh_, 977 F.2d 18, 22 (1st Cir. 1992) (internal quotation marks omitted).

Plaintiffs argue that interpreting the statewide agreement in this way would permit Labonte Drywall "to spontaneously cancel the collective bargaining agreement" in violation of federal labor law. Pls.' Br. at 31. Pursuant to the National Labor Relations Board's decision in _John Deklewa & Sons, Inc._, plaintiffs contend that Labonte Drywall was not free to "unilaterally repudiate" its agreement with the Union before the August 31, 2009 expiration of the collective bargaining agreement. _See_ 282 N.L.R.B. 1375, 1385 (1987); _see also_ _C.E.K. Indus. Mech. Contractors, Inc._ v. _NLRB_, 921 F.2d 350, 357 (1st Cir. 1990) (adopting _Deklewa_ "as the law in this circuit").

Assuming that _Deklewa_ applies to the agreement between Labonte Drywall and the Union,[9] plaintiffs' argument fails because

---

[9] The rule in _Deklewa_ that employers cannot unilaterally repudiate their agreements with unions applies only to agreements made pursuant to § 8(f) of the National Labor Relations Act. _See_ _Deklewa_, 282 N.L.R.B. at 1385 (1987) ("Neither employers nor unions who are party to [§] 8(f) agreements will be free unilaterally to repudiate such agreements."). Although "[a] union must usually demonstrate majority support among an employer's employees in order to enter a collective bargaining agreement with an employer," _NLRB_ v. _Goodless Bros. Elec. Co., Inc._, 285 F.3d 102, 104 (1st Cir. 2002), § 8(f) agreements permit "unions and employers in the construction industry [to] enter into collective bargaining agreements in the absence of a demonstration of majority representation by the union." _Haas Elec._, 299 F.3d at 27 n.3 (Stahl, J., concurring) (citing _Goodless Bros. Elec. Co._, 285 F.3d at 104-05). The parties do not dispute that Labonte Drywall

Labonte Drywall did not "unilaterally repudiate" its obligations under the collective bargaining agreement. Instead, Labonte Drywall terminated its collective bargaining relationship with the Union pursuant to the agreed-upon termination provision of the statewide agreement. The Union was a signatory to the statewide agreement and subject to its terms and conditions, which provided Labonte Drywall authority to terminate the agreement before the collective bargaining agreement's August 31, 2009 expiration date. Therefore, Labonte Drywall's termination cannot be considered "unilateral."

Because Labonte Drywall's agreement to abide by the terms and obligations of the collective bargaining agreement was only incorporated by reference in the statewide agreement, and Labonte Drywall's termination of the statewide agreement was effective on April 3, 2007, the company had no duty to submit to plaintiffs' audit requests through August 31, 2009.[10] Plaintiffs

---

entered into a § 8(f) agreement with the Union, and we therefore assume that the statute covers Labonte Drywall's agreement with the Union.

[10] Plaintiffs make no argument in their brief that Labonte Drywall must still submit to an audit request for the period between January 1, 2007 to April 3, 2007. We, therefore, consider any such argument waived. See Rodríguez v. Municipality of San Juan, 659 F.3d 168, 175 (1st Cir. 2011) ("[W]e deem waived claims not made or claims adverted to in a cursory fashion, unaccompanied by developed argument.").

"'are not entitled to enforce a nonexistent contractual obligation.'"[11] DeVito v. Hempstead China Shop, Inc., 38 F.3d 651, 654 (2d Cir. 1994) (quoting Teamsters Indus. Emps. Welfare Fund v. Rolls-Royce Motor Cars, Inc., 989 F.2d 132, 138 (3d Cir. 1993)).[12]

Affirmed.

---

[11] As they did in the district court, plaintiffs devote much of their briefing to explain the important obligation that benefit funds have in collecting contributions from employers under ERISA. However, as the district court stated, "[n]one of this . . . is a matter of dispute." Labonte Drywall Co., 2014 WL 2566136, at *4 n.4. Plaintiffs are not asserting an ERISA contribution claim against Labonte Drywall. Instead, plaintiffs contend that they have a right to conduct an audit of Labonte Drywall's records, a contractual obligation that is derived from Labonte Drywall's statewide agreement to abide by the terms of the collective bargaining agreement.

[12] Because we conclude that Labonte Drywall had no obligation to submit to plaintiffs' audit requests, we do not need to reach the issue of whether the defense of laches is available to Labonte Drywall in this action.